IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JIMMY REID,                        )
                                   )
              Petitioner,          )
                                   )
      v.                           )          1:14CV29
                                   )
DONALD MOBLEY, Administrator,      )
Warren Correctional Institution,)
                                   )
              Respondent.          )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Pro se Petitioner Jimmy Reid is serving two consecutive prison
sentences in a North Carolina prison following convictions for
second-degree rape and incest.  (Doc. 7-3 at 41-43.)  Before the
court is Reid's petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2254.   (Doc. 2.)   Respondent Donald Mobley, the
Administrator for Warren Correctional Institution, first moved to
dismiss Reid's petition (Doc. 6) and now moves for summary judgment
on the petition (Doc. 15).  With his response to Mobley's motion for
summary judgment, Reid attached a "Motion for Leave to Conduct
Discovery" (Doc. 18-1) and also filed a motion for change of venue
(Doc. 22).

For the reasons set forth below, the court will deny Reid's
motions for discovery and change of venue, grant Mobley's motion for
summary judgment, and dismiss Mobley's motion to dismiss as moot.
Accordingly, the petition will be denied.

## I.   BACKGROUND

On January 26, 2009, a jury in Guilford County Superior Court convicted Reid of second-degree rape and incest.  (Doc. 2 at 1; Doc. 7-3 at 41-43.)  Reid waived his right to counsel, but the trial court appointed stand-by counsel for trial and sentencing.  (Doc. 7-3 at 25, 29-31, 44-46.)  On January 30, 2009, the trial court sentenced Reid to the aggravated range of 125 to 159 months of imprisonment for the rape conviction and to the presumptive range of 19 to 23 months imprisonment for the incest conviction, to be served consecutively. (Doc. 2 at 1; Doc. 7-3 at 50-55.)  The trial court further ordered Reid to submit to lifetime sex offender registration and satellite-based monitoring upon his release from prison.  (Doc. 7-3 at 56-59.)  With the aid of court-appointed appellate counsel, Reid appealed his convictions to the North Carolina Court of Appeals (Doc. 7-3 at 60-62), and that court filed a published opinion on May 18, 2010, finding no error (Doc. 7-2).[1]

Reid then filed a pro se motion for change of venue and a motion for appropriate relief ("MAR") with the Guilford County Superior Court on April 8, 2011.  (Doc. 16-2.)  On February 21, 2013, the

---

[1] Reid did not file a petition for discretionary review with the North Carolina Supreme Court. (See Doc. 2 at 2.)

State court denied both motions.  (Doc. 11-1.)[2]  Reid subsequently

sought review of this order by filing a <u>pro se</u> certiorari petition

in the North Carolina Court of Appeals on April 15, 2013 (Doc. 11-2),

which was denied on April 25, 2013 (Doc. 11-4).

Reid thereafter dated his federal habeas petition December 18,

2013, and filed it in this court on January 15, 2014, alleging four

grounds for relief.  (Doc. 2.)  In response to Reid's petition,

Mobley moved to dismiss, arguing that Reid's claims were time-barred

by the one-year statute of limitations of the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1).

(Docs. 6-7, 9-11.)  Reid responds that his petition was entitled to

a belated commencement of the statute of limitations under 28 U.S.C.

§ 2244(d)(1)(B) due to a State impediment that prevented him from

filing his petition.  (Docs. 12-13.)  Mobley did not file a reply

to Reid's timeliness arguments, but instead moved for summary

judgment, contending that Reid's claims should be denied on their

merits.  (Docs. 15-16.)  Reid has filed multiple documents

following Mobley's motion for summary judgment: a response (Doc.

---

[2] Both Reid and Mobley appear to take the position that the same judge who
presided over Reid's trial, Judge Stuart Albright, also ruled on Reid's
motion for change of venue and MAR.  (<u>See</u> Doc. 7 at 1; Doc. 11-2 at 2; Doc.
16 at 2.)  However, the order denying these motions makes clear that Judge
Albright "had no[] involvement with the post-conviction review at hand."
(Doc. 11-1 at 2.)  The signature at the conclusion of the order appears
to be that of Judge A. Robinson Hassell.  (<u>Id.</u> at 4.)

18);[3] a "Supplemental Response" (Doc. 20); an "Amended Supplemental" response to Mobley's "full answer" (Doc. 21); and a motion seeking a change of venue (Doc. 22).

The motions are now ready for consideration.

## II.  ANALYSIS

### A.  Motion for Summary Judgment

#### 1.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure, which allows a party to move for summary judgment, applies to habeas proceedings. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991).  Summary judgment is appropriate when there exists no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Brandt v. Gooding, 636 F.3d 124, 132 (4th Cir. 2011).  The moving party bears the burden of initially coming forward and demonstrating the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once that burden is met, the non-moving party must then affirmatively demonstrate that there is

---

[3] Reid's response to Mobley's full answer contains an attachment titled "Motion for Leave to Conduct Discovery."  (Doc. 18-1.)  The Clerk did not docket this attachment as a freestanding motion because Reid did not comply with Local Rule 7.3(a) which requires all motions to be set out in a separate pleading and accompanied by a brief.  Nevertheless, in light of Mobley's response opposing discovery (Doc. 19) and Reid's reply in support of discovery (Doc. 20), the court will treat Reid's request for discovery as a motion and rule on it in this Memorandum Opinion and Order.

a genuine dispute of material fact that requires trial. <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Sylvia Dev. Corp. v. Calvert Cnty., Md.</u>, 48 F.3d 810, 817 (4th Cir. 1995). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from it, in the light most favorable to the non-moving party. <u>Zahodnick v. Int'l Bus. Machines Corp.</u>, 135 F.3d 911, 913 (4th Cir. 1997); <u>Halperin v. Abacus Tech. Corp.</u>, 128 F.3d 191, 196 (4th Cir. 1997).

The court construes <u>pro</u> <u>se</u> petitions, including habeas petitions, liberally. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Hill v. Braxton</u>, 277 F.3d 701, 707 (4th Cir. 2002). However, this liberal construction has its limits and does not require the court to become an advocate for a petitioner. <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1152-53 (4th Cir. 1978).

This court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); <u>see also</u> <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002). More specifically, the court may

not grant relief unless a State court decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To qualify as "contrary to" United States Supreme Court precedent, a State court decision must either arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" of that reached by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405–06 (2000). A State court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"). Finally, this court must presume that State court findings of fact are correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## 2.   Alleged Withholding of Exculpatory Evidence

In Reid's first ground for relief, he contends that the prosecution failed to disclose a lab report from the State Bureau of Investigation ("SBI"), until "it was to[o] late for [him] to mount a proper defense using it." (Doc. 2 at 5.) Reid alleges that the withheld report is exculpatory because it confirmed that the DNA of the sperm recovered from the victim did not match his DNA profile. (Id. at 6, 8.) Reid argues that the prosecution's alleged withholding of this evidence violated his due process rights under the U.S. Constitution. (Id. at 9.) This argument provides no basis for habeas relief.[4]

---

[4] Reid's first, third, and fourth grounds for relief are likely procedurally barred. "Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000). In dismissing Reid's MAR, the North Carolina Superior Court rejected those three grounds for relief as procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3) ("Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so."). See McCarver, 221 F.3d at 588 (holding that N.C. Gen. Stat. § 15A-1419(a)(3) is an independent and adequate state procedural bar). Reid could have brought those claims in his direct appeal but did not. Id. (noting that N.C. Gen. Stat. § 15A-1419(a)(3) "requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review"). There is no indication that N.C. Gen. Stat. § 15A-1419(a)(3) has been inconsistently or irregularly applied by the state court. Brown v. Lee, 319 F.3d 162, 170 (4th Cir. 2003); see also McCarver, 221 F.3d at 589 (requiring a petitioner to cite "a non-negligible number of cases" in which state courts do not consistently and regularly use a state procedural rule to bar the relevant federal claim). Moreover, Reid does not offer, and cannot demonstrate, "cause and

Reid raised the substance of this ground for relief in his MAR, and the state trial court denied that claim on the merits as follows:

> [Reid] further alleges denial of due process upon allegations of noncompliance with procedural discovery requirements and the U.S. Supreme Court decision of Brady v. Maryland, 373 U.S. 83 (1963), specifically as related to the DNA testing results from the N.C. SBI Crime Lab. This contention is wholly without merit in that [Reid]'s identity as the perpetrator was not in issue as he conceded he had had sexual intercourse with the complaining witness, the lab results and report in fact implicate [Reid] and are not exculpatory, and they were never introduced into evidence.

(Doc. 11-1 at 3-4.)  When analyzed under the deferential standard of review, the State trial court's ruling on this claim was not contrary to, nor involved an unreasonable application of, Brady v. Maryland and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In Brady, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to

---

prejudice" or "a fundamental miscarriage of justice" averting his claims from procedural default.  Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Murray v. Carrier, 477 U.S. 478, 486, 496 (1986) (observing that (1) "default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived that claim"; and (2) a fundamental miscarriage of justice excuses a procedural default only "where a constitutional violation has probably resulted in the conviction of one who is actually innocent").  However, the court need not ultimately decide whether Reid is procedurally barred under N.C. Gen. Stat. § 15A-1419 because his claims fare no better on the merits.

punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87. The prosecutor's duty to disclose such exculpatory evidence is applicable even in the absence of a request for the information by the accused. <u>United States v. Agurs</u>, 427 U.S. 97, 110-11 (1976). To successfully demonstrate a <u>Brady</u> violation, a petitioner must satisfy three requirements. First, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). Second, the evidence must have been willfully or inadvertently suppressed by the State (i.e., the State had the materials and failed to disclose them). <u>Id.</u>; <u>see also</u> <u>United States v. Stokes</u>, 261 F.3d 496, 502 (4th Cir. 2001). Finally, prejudice against a petitioner must have resulted (i.e., the evidence at issue was "material"). <u>Strickler</u>, 527 U.S. at 281-82; <u>see also</u> <u>Stokes</u>, 261 F.3d at 502. Evidence is considered "material" and thus subject to <u>Brady</u> disclosure "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). The record in this case fails to establish any of the three elements necessary to demonstrate a <u>Brady</u> violation.

First, as the State trial court correctly recognized, the DNA

evidence at issue is not exculpatory because the report confirmed that the DNA of the semen recovered from the victim matched Reid's DNA profile.  (See Doc. 16-8 at 2-4; Doc. 10-3 at 1-2.)

Second, not only does the record fail to show that the prosecutor withheld the DNA report from Reid, but it demonstrates that the prosecution did not even possess the DNA report until after Reid's conviction by the jury.  At the start of Reid's trial on January 20, 2009, the SBI laboratory had already performed a preliminary test (dated January 7, 2009) on the evidentiary samples recovered from the victim and had concluded that certain of the samples revealed the presence of semen, sperm, and blood.  (Doc. 10-2 at 4-5.)  The SBI laboratory, however, had not yet performed its DNA analysis. (Doc. 16-6 at 3-7.)  After Reid marked the SBI's preliminary report as a defense exhibit and questioned the detective about its contents, the trial court admitted the preliminary test report into evidence at the request of the prosecutor.  (Doc. 16-6 at 69-90.)  Following the jury's guilty verdict but before sentencing Reid, the trial court entered an order under N.C. Gen. Stat. § 15A-269 requiring the SBI laboratory to expedite its DNA analysis of the evidentiary samples. (Doc. 16-7 at 120, 123-28; Doc. 7-3 at 45-46.)  On January 30, 2009, outside the presence of the jury (who had been discharged from service four days earlier) and just before the trial court sentenced Reid,

the prosecutor provided Reid, his stand-by counsel, and the trial court with a copy of the SBI laboratory's DNA report, which was dated January 29, 2009, and confirmed that DNA recovered from the victim matched Reid's DNA profile. (See Doc. 16-8 at 2-4; Doc. 10-3 at 1-2.) The State, therefore, could not withhold evidence it did not yet possess, and, moreover, the State provided Reid with the DNA evidence at its first opportunity to do so.

Finally, the State trial court correctly found that the DNA report was not material evidence, because Reid's identity as the perpetrator was no longer in issue after Reid admitted to engaging in sexual intercourse with the victim on the day in question both in his voluntary statement to a detective (Doc. 7-3 at 13) and in his closing argument (see, e.g., Doc. 16-7 at 42-43, 45, 51-53, 57, 59, 68). Thus, the absence of this DNA evidence could not have prejudiced Reid.

In sum, the State court did not act contrary to or unreasonably apply clearly established federal law when it determined that the SBI DNA report identified by Reid did not meet the Brady standards. Reid's first ground for habeas relief therefore lacks merit.

### 3. Claims of Ineffective Assistance of Trial and Appellate Counsel

Reid next alleges that both his trial and appellate counsel provided constitutionally ineffective assistance. (Doc. 2 at 5, 37-

53.)  Reid claims that his appointed trial counsel "refused to talk or meet with [him]" to discuss his case, which lead him to request the right to represent himself and to the trial court's granting his trial counsel's motion to withdraw and assigning her as stand-by counsel.  (Id. at 5, 37.)  Further, Reid asserts that his trial counsel "gave [him] very bad advi[c]e" regarding "important matters," including that he should not inform the trial court of a tape-recorded conversation between Reid and a detective, which the "state" allegedly erased and in which Reid invoked his right to counsel.  (Id. at 37–38.)  Finally, Reid contends that his trial counsel had "a conflict of interest because her goal was to help the State by not performing as an attorney for her client."  (Id. at 39.)

As to his appointed appellate counsel, Reid claims that counsel failed to raise numerous issues, such as alleged perjury at trial and the trial judge's purported conflict of interest.  (Id. at 38–39.)  Reid contends that his appellate counsel's representation was also ineffective because counsel "misle[d] [him] about what was in [the] transcript from trial," including informing Reid that the SBI's DNA evidence was not introduced as evidence at Reid's trial.  (Id. at 39–41, 46–47.)  Reid further faults appellate counsel because he failed to object to "more than 75 pages of [the] trial transcript being missing" and "wouldn't argue anything [Reid] asked of him."

(Id. at 38-39)  Reid's allegations of ineffective assistance lack merit.[5]

As an initial matter, the court will deny Reid's ineffective assistance allegations to the extent that those claims are based upon his trial counsel's "conflict of interest" due to a "goal . . . to help the state."  Such allegations are entirely unsupported and conclusory, and will be denied.  See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on . . . any claim[,] a habeas petitioner must come forward with some evidence that the claim might have merit.  Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."); Jones v. Polk, 401 F.3d 257, 269-70 (4th Cir. 2005).  The fact that Reid filed a bar complaint against his stand-by counsel

_____

[5] This ground for relief is likely procedurally barred as to Reid's trial counsel.  "Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice."  McCarver, 221 F.3d at 588.  The North Carolina Superior Court denied this ground for relief on an independent and adequate State procedural bar.  See N.C. Gen. Stat. § 15A-1419(a)(3); see also McCarver, 221 F.3d at 588-93.  Neither limited exception to avoid State procedural bars applies here.  See Coleman, 501 U.S. at 750; see also Fowler v. Joyner, 753 F.3d 446, 460-63 (4th Cir. 2014) (noting a "narrow exception" to Coleman allowing North Carolina State prisoners to bring their ineffective assistance of counsel claims in federal habeas review, despite not raising those claims on direct appeal).  However, as noted earlier, the court need not ultimately decide whether Reid is procedurally barred under N.C. Gen. Stat. § 15A-1419 because his claim lacks merit.

(Doc. 10-3 at 6-7), standing alone, does not create an actual conflict of interest. United States v. Blackledge, 751 F.3d 188, 196 (4th Cir. 2014); United States v. Jones, 900 F.2d 512, 519 (2d Cir. 1990).

Reid also makes allegations regarding his stand-by counsel's ineffective assistance during his trial. However, whether Reid can even assert an ineffective assistance of counsel claim against stand-by counsel is questionable. See United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) (holding that because defendant has no constitutional right to stand-by counsel, he has no such right to effective stand-by counsel) (citing McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) and Faretta v. California, 422 U.S. 806, 834-35 n.46 (1975)); United States v. Cochrane, 985 F.2d 1027, 1029 n.1 (9th Cir. 1993) (rejecting a similar ineffective assistance of standby counsel claim without foreclosing that argument in the future); United States v. Windsor, 981 F.2d 943, 947 (7th Cir. 1992) ("This court knows of no constitutional right to effective assistance of standby counsel."); Allen v. Warden, Keen Mountain Corr. Ctr., No. 1:13cv726 (JCC/TCB), 2014 WL 1613455, at *5-6 (E.D. Va. Apr. 22, 2014) (same); Gripper v. United States, No. 1:06CV85-T, (1:03CR4-T), 2008 WL 2704304, at *4 (W.D.N.C. July 3, 2008) (observing that "an ineffective assistance of counsel claim against standby counsel is suspect").

In any event, Reid's allegations against his trial counsel fall short because he has not met his burden for establishing such claims as set forth in Strickland v. Washington, 466 U.S. 668 (1983). To prove ineffective assistance of counsel, a petitioner must establish, first, that his counsel's performance "fell below an objective standard of reasonableness" and, second, that prejudice resulted from counsel's deficient performance. Id. at 687-96. The United States Supreme Court has recognized that, in order to avoid "the distorting effects of hindsight," courts should employ "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." Harrington v. Richter, 131 S. Ct. 771, 791 (2011). Rather, "[t]he likelihood of a different result must be substantial, not just conceivable." Id. at 792.

Regarding Reid's allegations that his appointed trial counsel refused to meet with him or otherwise discuss his case, a letter to

Reid from his counsel upon her appointment shows that Reid had already indicated to the judge that he wanted to represent himself prior to her appointment.  (Doc. 2 at 43.)  Notwithstanding Reid's request, counsel enclosed copies of the court file records, the statutes Reid was charged under, and the pattern jury instructions on those charges.  (Id.)  She further advised Reid that she would not be able to speak with him in the coming week due to a jury trial and encouraged Reid to communicate with her by letter or collect call.  (Id.)  When discussing her motion to withdraw with the State trial court, counsel also stated that she had reviewed Reid's files, conducted research on legal issues relating to Reid's case, and met with him to discuss his case.  (Doc. 16-3 at 10-11, 21 (reflecting the trial court's observation that counsel "worked very hard on [Reid's] case").)  Reid's showing fails to overcome the presumption that his trial counsel's performance fell "within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  Even assuming Reid could demonstrate deficient performance by counsel, he fails to show any resulting prejudice.  Reid not only insisted that his appointed attorney withdraw but also refused appointment of any other attorney.  (Doc. 16-3 at 4-25.)  Any prejudice that may have resulted from his self-representation cannot therefore be visited upon his appointed trial counsel.

To support his allegations of "bad advice" by trial counsel, Reid only points to counsel's alleged recommendation not to inform the judge of the tape-recorded conversation containing Reid's invocation of his right to counsel. (Doc. 2 at 38.) No evidence in the record supports this allegation. At trial, Reid did allege that such a recording existed and was contained on a phone in a briefcase at his house. (Doc. 16-5 at 134–35.) The trial court then advised Reid to speak to counsel (then serving as stand-by counsel) about retrieving the recording. (Id. at 134–35, 170.) In reviewing the record, Reid raised no issue or problem in obtaining the alleged recording but never presented evidence of the recording at trial. Even assuming Reid's trial counsel gave him this advice, Reid has again failed to show any resulting prejudice. Reid discharged his counsel prior to trial and insisted, over the protestations of the trial court, on proceeding pro se. (Doc. 16-3 at 4-25.) Thus, at any time during the trial, Reid was free to bring to the trial court's attention his allegations regarding erasure of the tape-recording, and any prejudice resulting from his failure to do so cannot be the fault of his appointed stand-by counsel.

Reid's assertions that his appellate counsel provided ineffective assistance similarly fail to show deficient performance under the Strickland standard. Reid's claim that appellate counsel

misled him about the introduction of DNA evidence during Reid's trial falls short.  Appellate counsel informed Reid that the DNA evidence was not admitted at trial.  (Doc. 2 at 46.)  As discussed above in the context of Reid's first ground for relief, the SBI's DNA evidence was in fact not introduced as evidence at Reid's trial.  Thus, appellate counsel's correct assertion of that fact in communications with Reid cannot constitute deficient performance.

Reid's argument that appellate counsel failed to object to seventy-five pages missing from the trial transcript and to make other arguments to the North Carolina Court of Appeals similarly misses the mark.  Reid has proffered no evidence to support his assertion that seventy-five or more pages are missing from the trial transcript.  Reid has submitted an email dated March 30, 2009, from the court reporter to appellate counsel, requesting a thirty-day extension to complete the transcription of the trial transcript due to a "computer crash."  (Doc. 2 at 45.)  The court reporter indicated that she "lost approximately seventy-five pages during the 'crash.'" (Id.)  The court reporter's email makes clear that she lost seventy-five pages worth of transcription when her computer crashed, not that she irretrievably lost seventy-five pages worth of testimony.  The court has before it the entire six-volume trial transcript which the court reporter certified was complete.  (Docs.

16-3 to 16-8.) As Reid's allegation regarding missing transcript pages lacks merit, appellate counsel was not deficient for his failure to make such an argument on appeal.

Regarding the other arguments Reid alleges his appellate counsel failed to make on appeal, letters from his counsel make abundantly clear that such arguments were considered by counsel but were not pursued because they were considered by counsel to be meritless or legally "weak." (Doc. 2 at 47-50.) Such strategic decisions fall within the range of reasonable professional assistance. See Jones v. Barnes, 463 U.S. 745, 750-54 (1983) (recognizing that appellate counsel need not raise every non-frivolous issue requested by defendant); see also Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal").

In conclusion, Reid's allegations that his trial and appellate attorneys failed him warrant no habeas relief.

### 4. Due Process Claim Regarding DNA Evidence

In his third ground for relief, Reid alleges that the trial court violated his Fifth Amendment due process rights when it ordered the SBI to expedite its DNA analysis but then permitted the jury to reach

a verdict without the SBI's DNA evidence. (Doc. 2 at 54.) This argument provides no basis for habeas relief.

Reid is entitled to relief if a constitutional error by the trial court "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). A federal habeas court must grant relief if it is in "grave doubt" as to the harmlessness of the error. O'Neal v. McAninch, 513 U.S. 432, 436 (1995); Fullwood v. Lee, 290 F.3d 663, 679 (4th Cir. 2002). "'[G]rave doubt' exists when, in the relevant circumstances, the question is so evenly balanced that the reviewing court finds itself in 'virtual equipo[i]se' on the harmlessness issue." Barbe v. McBride, 521 F.3d 443, 461 (4th Cir. 2008) (quoting Fullwood, 290 F.3d at 679); accord O'Neal, 513 U.S. at 435.

Here, the trial court's decision to permit the jury to deliberate and reach a verdict without the SBI's DNA evidence could not have had a substantial and injurious effect or influence in determining the jury's verdict because, as discussed in the context of Reid's first ground for relief, the SBI's DNA evidence confirmed that DNA recovered from the victim matched Reid's DNA profile. (See Doc. 16-8 at 2-4; Doc. 10-3 at 1-2.) As such, this evidence was consistent with the other trial evidence that the jury did consider. This contention is without merit.

### 5. Alleged Partiality of Trial Judge

In his final ground for relief, Reid contends that his Sixth Amendment "right to an impartial judge of the State" was violated when his trial judge "refused to recuse hi[m]self" and failed to "remain impartial during [the] trial." (Doc. 2 at 54.) Reid claims the trial judge was biased because he is "somehow" related to an attorney who had a purported interest in the outcome of Reid's trial. (Id.) This attorney employed Reid's wife (the victim's mother) and was also allegedly having an affair with her. (Id.) In addition, Reid asserts that this attorney was "involved in [his] case on the side of the state," because the victim and Reid's wife told this attorney about the rape, and the attorney then accompanied the victim and Reid's wife to the sheriff's department to report the rape. (Id. at 68-73.) As a result of this alleged bias, Reid claims that the trial judge ordered his legal papers taken from him, allowed the State to erase a tape-recording in which Reid invoked his right to counsel, sustained improper objections during Reid's cross-examination of witnesses, and failed to control the emotions of State witnesses. (Id. at 59-65.) Reid's allegations fail to establish a basis for relief.

Reid's allegations in his fourth ground for relief are wholly unsupported and conclusory, and thus will be summarily denied. See

<u>Nickerson</u>, 971 F.2d at 1136; <u>Jones</u>, 401 F.3d at 269.  First, Reid
fails to offer any evidentiary support for his allegations that the
trial judge's actions were motivated by bias.  The most the record
indicates is that the trial judge is "somehow" related to an attorney
who employed Reid's wife (the victim's mother) and who initially
assisted the victim with reporting the rape to the authorities.  The
record does not reflect that this attorney had any further
involvement in Reid's case.  So far as the record shows, the attorney
did not communicate with the trial judge about the case, did not
assist the detectives further in investigating the case, did not
participate in the case in his role as an attorney, and did not testify
as a witness for either side at trial.  Further, Reid has provided
no evidence beyond his own unsupported allegations of an "affair"
between his wife and this attorney.

Similarly, Reid provides no support for his claim that the trial
judge ordered his legal papers confiscated.  As recognized by the
North Carolina Court of Appeals when discussing this allegation on
direct appeal, the trial transcript shows that "the trial court made
a point of clarifying that [Reid] had not been physically attacked,
had access to his materials during the evening in his cell, had all
his materials when he arrived in court, and was organized and prepared
to proceed."  <u>State v. Reid</u>, 693 S.E.2d 227, 233 (N.C. Ct. App. 2010);

(see Doc. 16-6 at 3, 7–9, 11–13.).[6]

Finally, Reid fails to provide this court with any information regarding the trial judge's failure to control the emotions of the State's witnesses or which objections the trial judge improperly sustained, let alone demonstrate how such alleged trial errors had a substantial and injurious impact on his case under Brecht, 507 U.S. at 637.[7]  Such unsupported allegations do not entitle Reid to habeas relief.  See Rule 2(c), Rules Governing Sect. 2254 Cases; see also Talbert v. Clarke, No. 2:13CV199, 2014 WL 644393, at *16 (E.D. Va. Feb. 18, 2014) ("Rule 2(c) is more demanding than the notice pleading requirement of Fed. R. Civ. P. 8(a).  Mayle v. Felix, 545 U.S. 644, 655 (2005).  '[I]n order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review.'  Bullard v. Chavis, 153 F.3d 719, 1998 WL 480727, *2 (4th Cir. Aug. 6, 1998) (unpublished table decision) (quoting Adams v. Armontrout, 897 F.2d

---

[6] The Court of Appeals also found that Reid had failed to preserve this issue for appeal.  Reid, 693 S.E.2d at 233.

[7] Again, the Court of Appeals found that Reid did not preserve for appeal his challenges to the trial court's rulings on objections.  Reid, 693 S.E.2d at 232.

332, 333 (8th Cir. 1990)).").

**B.    Motion for Leave to Conduct Discovery**

In his motion for leave to conduct discovery, Reid requests that the court order the State to (1) produce "any and all" exculpatory or mitigating evidence; and (2) obtain cheek swabs from the victim's boyfriend and mother and send the swabs to the SBI laboratory for DNA testing.  (Doc. 18-1 at 1-3.)  Reid previously filed this same motion for discovery with his petition (Doc. 3 at 20-30), which another judge of this court denied on January 16, 2014 (Doc. 4).

"Unlike other civil litigants, a § 2254 habeas petitioner 'is not entitled to discovery as a matter of ordinary course.'" Stephens v. Branker, 570 F.3d 198, 213 (4th Cir. 2009) (quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)).  Instead, to secure discovery, a habeas petitioner "must provide reasons for the request" that establish "good cause."  Rule 6, Rules Governing Sect. 2254 Cases. "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he is entitled to habeas corpus relief."  Stephens, 570 F.3d at 213.

Here, Reid has failed to demonstrate good cause for the discovery he seeks.  As discussed in more detail in the context of Reid's first ground for relief, Reid has made no showing that the State has failed to produce all exculpatory evidence in his case.

24

Thus, no basis exists for the court to order the State to produce "any and all" exculpatory and mitigating evidence. Further, because the post-conviction DNA analysis showed that DNA recovered from the victim matched Reid's DNA profile and Reid admitted at trial that he had sexual intercourse with the victim on the day in question, Reid has failed to show why obtaining DNA evidence from the victim's boyfriend and mother would entitle him to habeas relief. Accordingly, the court will deny Reid's motion for leave to conduct discovery.

### C.    Motion for Change of Venue

As with Reid's motion for leave to conduct discovery (Doc. 22), Reid filed a previous motion for change of venue with his petition in this matter based on the "strong involvement" of certain persons in the Guilford County justice system (Doc. 3 at 1–9). A magistrate judge of this court denied that motion on January 16, 2014, noting that the federal court system and the Guilford County court system are "entirely separate court systems operated by separate governments," and that Reid presented "no reason to consider changing venue to a different federal court." (Doc. 4.) Reid now reasserts that he is entitled to a change of venue because (1) the trial judge in his underlying criminal case is a "federal judge" and therefore a "colleague" of the magistrate judge that denied his first motion

for change of venue; and (2) that same magistrate judge "was a prosecutor" in Greensboro, North Carolina, and "tried cases" under the trial judge in his underlying criminal case. (Doc. 22 at 1-2.) Reid's allegations do not entitle him to a change of venue.

As an initial matter, Reid is incorrect that the trial judge in his underlying criminal case is (or ever has been) a "federal judge." However, even if Reid were factually correct, to show entitlement to a change of venue based on judicial bias requires much more than an assertion that two individuals are professional colleagues. See United States v. Sundrud, 397 F. Supp. 2d 1230, 1236 (C.D. Cal. 2005) (quoting Smith v. State, 375 S.E.2d 69, 74 (Ga. Ct. App. 1988)) (recognizing that "the existence of a working relationship in and of itself does not demonstrate or presume personal bias or prejudice"). Reid's assertion that this purported professional relationship makes the court "unable to put it[s] personal feeling[s] aside" in deciding this case is entirely speculative and insufficient to entitle Reid to a change of venue. (Doc. 22 at 1.) As such, Reid's motion for change of venue will be denied.

## III. CONCLUSION

For the reasons stated herein,

IT IS THEREFORE ORDERED that Reid's motion for leave to conduct

26

discovery (Doc. 18-1) is DENIED, Reid's motion for change of venue (Doc. 22) is DENIED, Mobley's motion for summary judgment (Doc. 15) is GRANTED, and the petition for a writ of habeas corpus (Doc. 2) is DISMISSED WITH PREJUDICE.  This disposition renders Mobley's motion to dismiss (Doc. 6) moot.

Finding neither a substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability is not issued.

                              /s/    Thomas D. Schroeder
                              United States District Judge


September 29, 2014